PETER M. RYERSON (who sues for the use of David Ryerson and Ebenezer B. Woodward) *vs.* WILLIAM H. QUACK-ENBUSH.

1. Under the statute of this state concerning landlords and tenant, (*Nix. Dig.* 418, ¿ 4,) a levy and sale of the goods of a tenant upon the demised premises, by a sheriff or other officer under an execution, is a removal of the goods within the contemplation of the statute, whether the goods are actually taken from the premises or not.

2. By the terms of a lease, made by P. M. R. to W. and C., the rent was made payable to the lessor, to be applied to the payment of a certain decree in the Court of Chancery, held by D. R. and E. B. W.: *Held,* that it was a good reservation of rent to the lessor, the special purpose to which the rent was to be applied in nowise affecting its character as *rent,* or the legal rights of the parties in regard to enforcing its payment.

Ryerson v. Quackenbush.

3. An assignment of rent before it is due will enable the assignee to maintain an action in his own name; but if made after the rent is due, it being a mere chose in action, the assignment will not convey any right of action to the assignee, nor divest the lessor of the right to maintain the action.

4. An assignment of rent is valid without the attornment of the tenant; but the rent cannot be apportioned by the landlord to different persons without the tenant's assent.

Peter M. Ryerson, who sues for the use of David Ryerson and Ebenezer B. Woodruff, brought an action of trespass on the case against William H. Quackenbush, sheriff of the county of Passaic.

The defendant, by virtue of sundry executions, issued and directed to him, against Thomas Wallace and James H. Concklin, had sold certain personal property belonging to said Wallace and Concklin, on premises leased to them by Peter M. Ryerson.

The lease bears date on the second day of February, 1853, and the property, which consisted of a blast furnace, mills, and other property used in connection therewith, was leased to said Wallace and Concklin, by said Peter M. Ryerson, for the term of three years from the first day of June, 1853, at the yearly rent of three thousand dollars, payable half-yearly, " the said rent to be applied to the payment of the principal and interest of a certain decree, obtained in the Court of Chancery in the State of New Jersey, in a cause wherein the American Life Insurance and Trust Company and George F. Tallman and Patrick McCauly, assignees and trustees of said company, are complainants, and the said Peter M. Ryerson and wife and others are defendants, and which decree is now held by David Ryerson, of Newton, in the county of Sussex, and Ebenezer B. Woodruff, of the county of Morris, for himself and others." The said Wallace and Concklin took possession of said premises according to the terms of said lease, and continued in possession up to the time of the sale of their personal property by the sheriff, in February, 1855.

The said Peter M. Ryerson, after the execution of said

lease, assigned one-half of the rent reserved thereby to David Ryerson, and said Wallace and Concklin gave their written assent to the assignment, and agreed to pay such half of the rent to said David Ryerson.

It appears that the other half of the rent was assigned by said Peter M. Ryerson to said Ebenezer B. Woodruff; but the assignment was not offered in evidence on the trial, and parol evidence of its contents being refused by the court, there was no evidence before the jury that Woodruff acquired any interest in said rent, except by the terms of the lease.

The assignment to David Ryerson and the said agreement on the part of Wallace and Concklin were as follows:

"Know all men by these presents, that I, Peter M. Ryerson, the lessor named in the indenture of lease of which the foregoing is a copy, for and in consideration of the sum of one dollar, to me paid by David Ryerson, esquire, of Newton, in the county of Sussex, the receipt whereof is hereby acknowledged, have assigned, transferred, and set over, and by these presents do assign, transfer, and set over, unto the said David Ryerson, his executors and administrators, the equal one-half part, that is to say, fifteen hundred dollars, of the yearly rent of three thousand dollars, by the said lease reserved, accruing and becoming due and payable half-yearly, from and after the first day of June, last past, for and during the remainder and residue of the term of years thereby demised, to have and to hold the said sum of fifteen hundred dollars of the rent aforesaid to the said David Ryerson, his executors and administrators, and to be applied and appropriated by him and them to the objects and purposes mentioned and provided for in the said lease.

And I do hereby appoint the said David Ryerson my true and lawful attorney, in my name or otherwise, to receive and collect from the said lessees the said sum of fifteen hundred dollars of the rent aforesaid, at the times

specified in the said lease, and to use all such lawful ways and means for the recovery thereof as I might do if these presents had not been made.

In witness whereof, I, the said Peter M. Ryerson, have hereunto set my hand and seal, the eighteenth day of November, in the year of our Lord one thousand eight hundred and fifty-three.

(Signed) PETER M. RYERSON. [L. S.]

Sealed and delivered in presence of John Hopper."

"The lessees named in the lease, whereof the foregoing is a copy, do hereby acknowledge notice of and consent to the foregoing assignment by Peter M. Ryerson to David Ryerson of fifteen hundred dollars of the rent of three thousand dollars reserved in said lease, from and after the first day of June last; and we, the said lessees, do hereby agree to pay the said fifteen hundred dollars of the rent aforesaid to the said David Ryerson, his executors and administrators, as the same shall become due and payable, according to the terms and stipulations of the said lease, for the residue of the term thereby demised. Dated November 18th, 1853.

(Signed) WALLACE & CONCKLIN,
by Thomas Wallace.

Witness present, David A. Ryerson."

On the back of the lease was a memorandum, in the handwriting of David Ryerson, as follows: "This lease delivered to me the 9th February, 1855; present, S. D. Morford, at Sussex Bank."

The executions against Wallace and Concklin were placed in the sheriff's hands, and their property on the demised premises sold thereon, in February, 1855. The following notice was served on the sheriff before the sale:

"To the sheriff of the county of Passaic.

Take notice, that there is due this day for rent of the furnace property, situated in Wynoke, in the county of Passaic, rented by Peter M. Ryerson to Thomas Wallace and James H. Conckling, on the 7th day of February, in

the year eighteen hundred and fifty-three, the sum of three thousand dollars, for one year's rent of said premises now due and unpaid, one-half of which rent has been assigned by said Ryerson to Ebenezer B. Woodruff, and the other half to David Ryerson; and you are hereby notified to pay the same to said Peter M. Ryerson, or to David Ryerson and said Ebenezer B. Woodruff, before proceeding to sell any property on the demised premises.

Dated Feb. 12, 1855.

> DAVID RYERSON,
> by E. W. Whelpley, attor'y.
> E. B. WOODRUFF."

The plaintiffs in execution indemnified the sheriff, and he sold the property without paying the rent. The property was not removed, but was used on the demised premises by the persons who purchased it at sheriff's sale. This action was thereupon brought against the sheriff to recover damages.

The cause was tried at the Passaic Circuit, before a jury, and a verdict rendered for the plaintiff for the amount of one year's rent, with interest.

The defendant moved for a new trial, on the following grounds:

*First.* Because there was no removal in law or fact of the goods sold from off the demised premises, and the court erred in charging the jury that there was removal in law.

*Second.* Because the judge refused to charge the jury that under the evidence, the plaintiff sustained no damage, inasmuch as the defendant did not remove the goods from off the demised premises, and sold the same subject to all prior encumbrances and liens, and left the same on the premises to an amount abundantly sufficient to pay the rent, and which goods remained on said premises a reasonable time after said sale.

*Third.* Because the judge refused to charge the jury that the plaintiff had sustained, if any, only nominal

damages, and the court erred in charging the jury that the defendant was liable in one year's rent in damages.

*Fourth.* Because the judge refused to charge the jury, that if there were sufficient proof to show that the plaintiff had assigned his interest in the rent in question, or any part thereof, to David Ryerson and Ebenezer B. Woodruff, or either of them, before the same accrued, that the plaintiff cannot recover, as a measure of damages, such rent so assigned.

*Fifth.* Because the judge ruled and decided that Peter M. Ryerson had a right to bring the action, whether he had assigned the rent or not, and whether the same had been assigned either before or after the same accrued.

*Sixth.* Because the court refused to non-suit the plaintiff, when the lease offered by the plaintiff shows that the rent was to go to pay a decree of foreclosure in favor of other parties, and also that the notice given on the day of sale showed that the rent had been assigned in halves to David Ryerson and Ebenezer B. Woodruff, and therefore the action was erroneously brought.

*Seventh.* Because the court refused to non-suit the plaintiff, on the ground that Peter M. Ryerson had divested himself of all interest in the rent.

*Eighth.* Because the court admitted in evidence to the jury the endorsement made in the handwriting of David Ryerson on the assignment of the rent against the objection of the defendant, and charged the jury that such endorsement and assignment must all be taken together.

*Ninth.* Because the charge of the court under the evidence in the case was contrary to law.

*Tenth.* Because the verdict was contrary to evidence, and the verdict and proceedings are in divers respects erroneous and illegal, and ought to be set aside.

The cause was argued at February Term, 1857, before the CHIEF JUSTICE, and Justices OGDEN, POTTS and VREDENBURGH.

*Bradley*, for the motion.

*Whelpley* and *Zabriskie, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

Action on the case, brought by Peter M. Ryerson, who sues for the use of Ebenezer B. Woodruff and David Ryerson, against William H. Quackenbush, sheriff of the county of Passaic, for removal of goods off of demised premises before payment of rent, contrary to the provision of the statute. *Nix. Dig.* 418, § 4.

The declaration avers that, on the twelfth of February, 1855, Thomas Wallace and James H. Concklin, then and for the space of one year then last past, had occupied the premises at Wynoque (on which stood the Freedom furnace, dwelling-houses, mills and other buildings) as tenants to the plaintiff; that on the said twelfth day of February, $3000 of rent for said premises for one year, ending on said day, became due and payable, and still remains due and unpaid; that on the twentieth day of February, in the year aforesaid, the defendant, under pretext of a writ of execution against the said Wallace and Concklin, at the suit of Norton and Beame, took the goods and chattels of the said Wallace and Concklin, then being in and upon the said premises, to a large amount beyond the amount of rent then due; that after the taking of the said goods, and before the removal thereof, under pretext of the said execution, the plaintiff gave notice to the defendant of the rent being due and unpaid, and requested payment of the rent before the removal of the goods; yet the defendant wrongfully sold, removed and carried away the said goods from the said premises, and the said goods were, by virtue of said process, sold and removed from the said premises contrary to the statute, without paying the plaintiff the rent due as aforesaid, or any part thereof, and the said rent still remains due and unpaid, by reason whereof the plaintiff has been deprived of the benefit of

distress for the recovery of the said rent, and is in danger of losing the same.

The second count is similar, save that instead of charging a removal of the goods from the premises by the defendant, it alleges that the defendant, in order to procure the removal of the goods from said premises, under color of the said writ of execution, took out of the possession of the said Wallace and Concklin, and into the sole and exclusive possession of the defendant, the said goods and chattels, and refused to permit the plaintiff to take the same as a distress for the rent so due as aforesaid, and thereby hindered the plaintiff from taking the same as a distress for the said rent; and the defendant sold the said goods and chattels at public auction, and delivered the same to certain purchasers thereof, who refused to pay and satisfy the plaintiff's rent.

The demised premises for which rent is claimed to be due to the plaintiff, and from which the goods of the tenants are charged to have been illegally removed by the defendant, as sheriff, under color of an execution against the tenants, were leased by the plaintiff to Wallace and Concklin, for three years from the first day of June, 1853, at an annual rent of $3000, payable half-yearly to the plaintiff, the rent to be applied to the payment of the principal and interest of a certain decree in the Court of Chancery of this state, against the said Peter M. Ryerson and others, held by David Ryerson and Ebenezer B. Woodruff.

By an assignment in writing under the hand and seal of the said Peter M. Ryerson, the lessor, bearing date on the eighteenth of November, 1853, the equal half part ($1500) of the rent reserved upon the said lease is assigned to David Ryerson, to be applied by him to the purposes specified in the said lease, and the said David Ryerson is appointed the attorney of the lessor to collect the said rent; and by another instrument, also endorsed upon the lease, the lessees, by writing signed by Thomas Wallace,

one of the lessees for Wallace and Concklin, admit notice of the foregoing assignment, and agree to pay the said $1500 of the rent to the said David Ryerson, according to the terms and stipulations of the lease.

On the trial, it appeared that the defendant, by virtue of sundry writs of execution in his hands, as sheriff of the county of Passaic, against Wallace and Concklin, being upon their personal property on the demised premises at Wynoque, and, on the twelfth of February, 1855, sold the said goods and chattels upon the demised premises, without having removed the same, to an amount exceeding $3000. Prior to the sale, notice of the existence of one year's rent was given to the sheriff, and payment thereof demanded by the attorney of the plaintiff and of those claiming to be beneficially interested in the rent.

David Ryerson, the assignee of half the rent, having been subpoenaed by the defendant as a witness, produced a copy of the lease and assignment to him, upon which there was endorsed, in the handwriting of the said David Ryerson, a memorandum, as follows: "This lease, delivered to me the 9th February, 1855, present S. D. Morford, at Sussex Bank." The court, on the trial, admitted this memorandum to go in evidence to the jury, though objected to by the defendant. A motion to non-suit the plaintiff was denied. The court (*pro forma*) instructed the jury that the action was properly brought; that there was in contemplation of law a removal of the goods from the demised premises by the defendant; that the defendant was entitled to no mitigation of damages on the ground of repairs made by the tenants to the demised premises with the assent of the lessor, and upon an agreement with him that the expense of such repairs should be deducted from the rent, if such repairs were made subject to notice of the assignment of the rent, and without the assent of the assignee. A verdict was taken for the plaintiff, and his damages assessed to the amount of one year's rent with interest.

This action is brought by the landlord against the defendant, as sheriff of the county of Passaic, for taking and removing goods from demised premises by virtue of an execution against the tenant, without paying the rent due to the landlord. The action is founded on the fourth section of the act concerning landlords and tenants, (*Nix. Dig.* 418.) The goods were not removed by the sheriff, but were seized and sold by virtue of an execution against the tenant upon the demised premises.

The first ground upon which it is sought to set aside the verdict is, that the action against the sheriff cannot be maintained, unless there be an actual *removal* of the goods from the demised premises by virtue of the execution. The provision on which the suit is founded was originally introduced into our law by the act of March 10th, 1795, § 4, (*Paterson Laws* 164.) That section is nearly a literal copy of the first section of the English statute of 8 *Anne, ch.* 14. Its language is as follows: " No goods or chattels whatsoever, lying or being, or which shall lie or *be* in or upon any messuage, lands, or tenements, which are or shall be leased for term of *life* or lives, year or years, at will or otherwise, shall be liable to be taken, by virtue of any execution, on any pretence whatever, unless the party at whose suit the execution is sued out shall, before the *removal of such goods from off the said premises* by virtue of such execution, pay to the landlord of the said premises, or his bailiff, all and every sum or sums of money as are or shall be due for rent for the said premises at the time of the taking such goods or chattels by virtue of such execution, provided the said arrears of rent do not amount to more than one year's rent;" and in case the said arrears shall exceed one year's rent, then the said party at whose suit the said execution is sued out, paying the said landlord or his bailiff one year's rent, may proceed to execute his judgment as he might have done before the making of this act; and the sheriff, or other officer, is hereby empowered and required to levy and

pay to the plaintiff as well the money so paid for the rent as the execution money."

In the construction given by the English courts to the statute of Anne, it appears to be settled that no action will lie against the sheriff, except upon proof of a *removal* of the goods from the demised premises. The gravamen of the action is not the seizure or levy by virtue of the execution, but the removal of the goods, to the prejudice of the landlord's remedy, after notice of his claim for rent. *Palgrave* v. *Windham, Strange* 212; 1 *Lilly's Ent.* 47; *Comyn's Land. and Tenant* 395; *Archbold's Landlord and Tenant* 254.

There is an apparently conflicting authority in *West* v. *Hedges, Barnes* 211, where, according to the report, it was held that a bill of sale was a removal of goods taken by virtue of a writ of *fieri facias.* But that was not an action against the sheriff, but an application to the court by the landlord, to be paid his rent out of the money levied by virtue of the execution. And the sheriff having, by virtue of the sale, made the money out of the goods upon the demised premises, the landlord, by the clear equity of the statute, would be entitled to the year's rent out of money in the sheriff's hands. *Comyn's Land. and Ten.* 396.

It is further held, under the statute of Anne, that it is immaterial whether the goods seized and removed from demised premises be the goods of the tenant or of a third person, provided they were goods upon which the landlord might have distrained. *Forster* v. *Cookson*, 1 *Queen's Bench* 419; *Archbold's Land. and Ten.* 256. And the reason assigned is, that as the landlord might have distrained the goods upon the demised premises, to whomsoever they belong, the sheriff, by removing the goods, has done to the landlord all the harm against which the statute meant to protect him.

It is insisted that the construction of the statute of Anne must be adopted as the true construction of our statute, upon the familiar principle that the legislature,

in adopting the phraseology of the English statute, must be presumed to have adopted, also, its well-settled meaning and construction. But in settling the construction of a statute, regard must be had not only to the design of the statute, but to the existing state of the law in relation to the rights to be affected. The object of the statute of Anne is declared to be, the more easy and effectual recovery of rents reserved on leases. Its immediate design was to prevent the landlord's right of distress from being defeated by the lien of an execution, and that not by making the landlord's claim for rent by distress a lien upon the property, but by requiring the execution creditor to satisfy the landlord's claim for rent, before removing the goods beyond the reach of a distress. The design of the statute was, therefore, fully answered by the court's holding—first, that the sheriff became liable to the landlord for damages, by removing any goods upon the demised premises, whether of the tenant or a stranger, because they were equally liable to distress; and second, that the sheriff was only answerable in case of an actual removal of the goods, because in case the goods were sold, and suffered to remain upon the premises, they became immediately liable to the landlord as a distress for rent.

But such construction would totally defeat the policy of our statute, because, by the express terms of the act concerning distresses, the landlord is entitled to take, as a distress for rent, the goods and chattels of his tenant, and not of any other person found upon the demised premises. *Nix. Dig.* 200, § 8. The landlord's right of distress, therefore, would be as effectually defeated by a levy and sale of the tenant's goods upon the premises as by their actual removal. On the other hand, to hold that the sheriff is liable to the landlord, by reason of the sale of the goods of a stranger found upon the demised premises, would contravene the policy of the act, because the landlord has no right of distress against the goods of a stranger, and

his remedy against the tenant can be in nowise prejudiced by such sale. Under our statute, a levy and sale of the goods of a tenant upon the demised premises, by a sheriff or other officer under an execution, is a removal of the goods, within the contemplation of the statute. It effects the very evil which the statute was designed to remedy. It effectually removes the goods beyond the reach of a distress. It defeats the landlord's remedy for his rent, and deprives him of that priority over execution creditors which the statute was intended to give. The court, therefore, rightly instructed the jury that there was a removal of the goods within the contemplation of the statute.

It was insisted, upon the argument, that a subsequent change in the law affecting the landlord's right of distress should not be held to vary the construction of a pre-existing statute. But, in point of fact, the two statutes in relation to distresses and to landlords and tenants were enacted by the same legislature at the same sitting. Both were under consideration at the same time. They are, therefore, strictly cotemporaneous acts, and each may be safely construed in relation to the provisions of the other, as a part of the existing law. It is, perhaps, worthy of notice that the eighth section of the act concerning distresses, as originally drawn by Governor Paterson, was a copy of the 8th section of the 11th *Geo.* 2, *ch.* 19, retaining the provisions of the English law unchanged, and that the fundamental change in the law, limiting the landlord's right of distress to the goods and chattels of his tenant, was introduced into the section in its passage through the legislature. The amendment was, in fact, made in council after the act concerning landlords and tenants had been ordered to a third reading, and the day before its final passage by that body. Both acts were subsequently passed by the house of assembly as they were received from council, without amendment. It is highly probable, therefore, that the retaining of the precise phraseology of the statute of Anne in the 4th section of

the act concerning landlords and tenants was the result of inadvertence.

The second ground on which it is sought to set aside the verdict is, that the plaintiff, who was the original lessor of the premises, had assigned the rent, before it became due, to third parties, and had thereby divested himself of the right of action. It is claimed, on the part of the defendant, in support of this objection, that it appears by the evidence, that Peter M. Ryerson, the lessor, assigned the rent reserved upon the lease, in equal portions in severalty, to David Ryerson and Ebenezer B. Woodruff before the rent became due. Assuming the fact to be as alleged, it is insisted that such assignment transferred no right of action to the assignees, and that the legal remedy was still with the original lessor, though for the benefit of his assignee: first, because rent cannot be severed from the reversion, and assigned to a stranger; and second, because the rent cannot be apportioned by the lessor to different owners, thus subjecting the tenant to different actions and different distresses. The jury, for the purposes of the trial, were instructed upon this point in favor of the plaintiff, without prejudice to the question of right, leaving the legal question open for the consideration of this court.

Rent, by the common law, is incident to the reversion, and cannot be *reserved* to a stranger. And though by the terms of the lease, the lessee covenant to pay rent, not to the lessor, but to a third party, the sum so covenanted to be paid is not properly a rent. It is not payable upon the land as rent is, nor can it be recovered by action or distress, for there is neither privity of contract nor privity of estate between the parties. *Littleton,* §§ 345, 346; *Co. Lit.* 213 *a, b,* 143 *b; Oates* v. *Frith, Hobart* 130, *a;* 2 *Bla. Com.* 41; 3 *Kent's Com.* 463.

But though the rent must be originally reserved to the lessor or his heirs, and is incident to the reversion, it is not inseparable from it. Having been created, it may be

severed from the reversion, and may be apportioned to different parties and upon different portions of the estate, either by the act of the party or by operation of law.

Thus, in *Ards* v. *Watkin*, *Cro. Eliz.* 637, 651, where, upon a lease for years rendering £34 per annum rent, the lessor devised £28, parcel of the rent, to his three sons, one-third to each in severalty, and debt was brought by one of the sons for his part of the rent, there was both a severance of the rent from the reversion, and an apportionment of it among the different devisees. The court said there was no doubt that the rent was devisable and separable from the reversion, for it is not merely a thing in action, but *quasi* an inheritance. And Popham, J., said, that although a thing in action cannot be transferred over, nor be devised, yet a contract which ariseth from an interest in land, or which *is* an interest, may be well transferred over. Upon the question whether the lessor, by devise, could, without the consent of the lessee, apportion the rent, the court were originally divided in opinion, on the ground that the lessee, without his consent, would thereby be liable to two actions or two distresses. But upon a subsequent argument, a majority of the court sustained the action, and one of the grounds suggested upon the original argument for holding the apportionment valid was, that the devise is *quasi* an act of law, which shall enure without attornment, and shall make a sufficient privity. And see *Wotton* v. *Shirt*, *Cro. Eliz.* 742.

In *Robbins* v. *Coxe*, 1 *Levintz* 22, *T. Raym.* 11, the Court of King's Bench were divided upon the question whether an action of debt for rent lay by the grantee of the rent without the reversion, the tenant having attorned, and the case was adjourned into the exchequer chamber. But according to the note of the reporter in Levintz, the case of Ards v. Watkin having been subsequently published, the rent was paid before argument.

But whatever doubt may have originally existed upon this point, it is now well settled that the assignee of rent

(without the reversion) reserved on a lease for years, may have debt for the rent against the lessee. *Vin. Ab.*, "*Estate*," *B, b,* 18, *pl.* 10 ; *Bac. Ab.*, "*Rent*," *M*; *Gilbert on Rents* 165–6 ; 4 *Cruis. Dig., title* 28, *ch.* 3, §§ 19, 20, 21, 31 ; *Allen* v. *Bryan*, 5 *Barn. & Cress.* 512 ; *Demarest* v. *Willard*, 8 *Cowen* 206 ; *Farley* v. *Craig*, 6 *Halst.* 273 ; *Willard* v. *Tillman*, 2 *Hill* 274.

Originally it was held that the attornment of the tenant was necessary to the validity of the assignment; but such attornment was rendered unnecessary by the statute 4 *Anne, ch.* 16, § 9, *Nix. Dig.* 123, § 15, which declares that every grant or conveyance of *rent* shall be good and effectual without attornment by the tenant.

In *Farley* v. *Craig*, 6 *Halst.* 273, the rule that a rent charge may be apportioned by a grant of a part of the rent, was recognized and adopted by this court. It is true, as was suggested upon the argument, that Mr. Justice Ford, in the citation from Kent's Commentaries of the rule, "that a rent charge may be apportioned whenever the reversioner or owner of the rent either releases part of the rent to the tenant or *conveys part of the rent to a stranger*," has, in the last passage, substituted the word *rent* for *land*, materially altering its meaning. 3 *Kent* 376, 470. The authorities cited by Kent, however, fully sustain the doctrine as stated by Mr. Justice Ford. Thus, in *Coke Lit.* 148, *a*, it is said, that a rent charge, by the act of the party, may in some cases be apportioned, as if a man hath a rent charge of twenty shillings, he may release to the tenant of the land ten shillings more or less, and reserve part. So if the grantee of an annuity or rent charge of twenty pounds grant ten pounds, parcel of the said annuity or rent charge, and the tenant attorn, hereby the annuity or rent charge is divided. Kent, in the passage cited, states the undoubted right of the landlord, in certain specified methods, to apportion the rent without the consent of the tenant. The passage, as found cited by Justice Ford, though inaccurate as a quotation, does not mis-

state the law regarding the power of the landlord to appor-
tion the rent by conveying part of the rent to a stranger with
the assent of the tenant.

The law being that rent accrued may be severed from
the reversion ; that it may be assigned by the landlord so
as to vest in the assignee a right to maintain an action ;
that it may be apportioned by act of law, or (with the
tenant's assent) by direct assignment of the rent by the
landlord to one or more strangers, it remains to inquire
whether, upon the facts of this case, the action can be
sustained.

By the terms of the original lease made by Peter M.
Ryerson to Wallace and Concklin, the rent was made pay-
able to the lessor, Peter M. Ryerson, to be applied to the
payment of a certain decree in the Court of Chancery held
by David Ryerson and Ebenezer B. Woodruff. It is clearly
a good reservation of rent to the lessor, the special purpose
to which the rent was to be applied in nowise affecting its
character as *rent* or the legal rights of the parties in regard
to enforcing its payment.

But by an assignment in writing under seal, bearing
date on the 18th of November, 1853, which was produced
upon the trial, Peter M. Ryerson, the lessor, assigned to
David Ryerson, the one equal half part, viz., $1500, of the
yearly rent of $3000 reserved by the said lease, accruing
half-yearly, from and after the first day of June then last
past, for the residue of the term created by the lease.
There was, also, evidence offered upon the trial strongly
tending to show that an assignment of the other moiety
of the rent reserved upon the lease was made to Ebenezer
B. Woodruff. This assignment was not produced, and
due notice to produce it not having been given, the judge
properly excluded parol evidence of its contents. There
was no proof of its actual date, nor any satisfactory proof
of its execution before the rent, which forms the subject
of the present controversy, or any part of it, fell due. The
case therefore stands upon proof of the assignment to

Ryerson; because, admitting the fact of the assignment to Woodruff previous to the sale by the sheriff, it would not affect the legal rights of the lessor under the lease, unless made before the rent fell due. The assignment of rent past due, being a mere chose in action, would convey no right of action to the assignee, nor divest the lessor of the right to maintain the action.

The assignment to David Ryerson, which was offered in evidence, bears date before any part of the rent became due. The legal presumption is, that the instrument coming from the hands of the assignee was executed and delivered at the time it bears date.

The presumption is not repelled by the testimony of the subscribing witness, that the assignee was not present when it was executed, and that the witness had no knowledge of its delivery. That all may be, and yet the instrument have been delivered upon the day and within the hour of its execution. The evidence should have gone further, and shown that, in point of fact, it was not delivered till after the rent fell due. This was attempted, on the part of the plaintiff, first, by offering the testimony of David Ryerson, which was overruled. There was an endorsement on the back of the lease and assignment, admitted to have been in the handwriting of the assignee, in these words: " This lease delivered to me the 9th of February, 1855, present, S. D. Morford, at Sussex Bank." This memorandum, though objected to by the defendant, was admitted as evidence to the jury. It does not appear for what purpose the memorandum was admitted. It was clearly not competent to prove the time of the actual delivery of the lease, nor could it rebut the presumption of the time of delivery resulting from the date of the assignment. It appears, then, by the evidence, that one-half of the rent for which the recovery was had was assigned by the plaintiff to David Ryerson before the rent fell due, and that the plaintiff was divested of all right of action for that portion of the rent.

· But it is objected that the assignment was invalid because the lessor had no right to apportion the rent, and thus subject the tenants to two or more actions or distresses for the rent falling due upon the same lease and upon one entire contract. The answer to the objection is twofold. Admitting the law to be (which is stating the case most strongly for the plaintiff), that notwithstanding the act declaring an assignment of rent valid without the attornment of the tenant, still the rent cannot be apportioned by act of the lessor without the assent of the tenant, there is in this case evidence of the assent of the tenants to the assignment, and of their actual attornment to the assignees. It may be further answered that the objection does not lie in the mouth of the lessor who made the assignment. The rule is for the protection of the tenant. The assent of the tenants to the apportionment, under the facts of this case, would be fairly presumed, if there were no express proof of their attornment.

The plaintiff having recovered a larger amount of damages than by law he is entitled to, the verdict must be set aside, and a new trial granted.